**DEPUY SPINE, INC., f/k/a Depuy Acromed, Inc. and Biedermann Motech GmbH, Plaintiffs**

v.

**MEDTRONIC SOFAMOR DANEK, INC., f/k/a Sofamor Danek Group, Inc., and Medtronic Sofamor Danek USA, Inc., Defendants.**

**Civil Action No. 01–10165–EFH.**

United States District Court, D. Massachusetts.

Feb. 25, 2008.

Allan W. Jansen, Jones, Day, Reavis & Pogue, Irvine, CA, Calvin P. Griffith, Patrick J. Norton, Robert L. Canala, Robert C. Kahrl, Thomas R. Goots, Jones Day, Isaac A. Molnar, Jones, Day, Reavis & Pogue, Cleveland, OH, Joseph F. Shea, Scott E. Erlich, Nutter, McClennen & Fish, LLP, Boston, MA, Greer N. Shaw, Luke L. Dauchot, Robert G. Krupka, Kirkland & Ellis LLP, Los Angeles, CA, for Plaintiffs.

David E. Marder, Lisa A. Furnald, Robins, Kaplan, Miller & Ciresi L.L.P., Lauren B. Fletcher, Mark C. Fleming, Timothy R. Shannon, WilmerHale LLP, Boston, MA, Dirk D. Thomas, Jason R. Buratti, Robins, Kaplan, Miller & Ciresi LLP, Robert A. Auchter, Dewey Ballantine, L.L.P., Andre J. Bahou, Dewey & LeBoeuf LLP, Washington, DC, Brian K. Erickson Dewey Ballantine LLP, Austin, TX, for Defendants.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

Before the Court is the Plaintiffs' Motion for Enhanced Damages and Attorneys' Fees. The motion is allowed in part and denied in part.

### I. Enhanced Damages Under 35 U.S.C. § 284

The plaintiffs acknowledge that willfulness is a prerequisite to enhanced damages under § 284. Because there was insufficient evidence of willfulness in this case, the plaintiffs' request for enhanced damages is denied. (*See* Docket No. 647 (denying Plaintiffs' Motion for a New Trial)).

### II. Attorneys' Fees Under 35 U.S.C. § 285

The plaintiffs recite a litany of alleged misconduct on the part of the defendants. Although the majority of these allegations are not sufficiently serious to warrant the imposition of attorneys' fees, the Court does have concerns about the manner in which the defendants litigated their defense to infringement under the doctrine of equivalents. Throughout trial, the defendants demonstrated a failure to accept the claim construction governing this case. In fact, with the exception of their ensnarement argument, their defense to infringement appears to have been wholly based on an attempt to obscure, evade, or minimize the Federal Circuit's construction of the patent-in-suit (the '678 patent). Even as early as the defendants' opening statements, they essentially urged the jury to adopt an interpretation of the patent claims developed by their experts instead of the construction mandated by the Federal Circuit. This strategy continued with the testimony of defense witnesses Dr. Foley and Prof. Oxland, both of whom suggested that the '678 patent requires mating surfaces between the screw head

and the receiver member, which, they argued, renders it substantially different from the accused products (which have non-mating surfaces that lock the screw by means of an interference fit).

Contrary to the defendants' repeated suggestions at trial, however, the '678 patent does not require mating or matching surfaces. The Federal Circuit held that the '678 patent encompasses both surface contact between the screw head and the receiver member (in essence, mating surfaces), as well as mere edge contact between the two (which would be consistent with an interference fit). *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 469 F.3d 1005, 1014–15 (Fed.Cir.2006), *cert. denied* — U.S. ——, 128 S.Ct. 58, 169 L.Ed.2d 243 (2007).

In their memorandum opposing the imposition of attorneys' fees and enhanced damages, the defendants argue that their interpretation of the '678 patent is entirely consistent with the claim construction governing this case. In support of this contention they assert that the plaintiffs' own witness, Erik Antonsson, agreed that the '678 patent "describe[s] a screw head and receiver with substantially the same radius of curvature." (Defendants' Memorandum at 16). This argument lacks merit. Although Prof. Antonsson agreed that the '678 patent's *specification* depicts matching radii, it is an elementary principle of patent law that patent claims are not limited to the embodiments set forth in the specification. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed.Cir.2005). More important, though, is the fact that the claims had already been construed by the Federal Circuit. The fact that the plaintiffs' expert accurately described the embodiment depicted in the specification of the patent is completely irrelevant to the question at hand.[1]

The defendants also make a point of noting that the Federal Circuit sent the case back to be tried under the doctrine of equivalents. The defendants appear to be contending that if the edge contact between the screw head and the receiver member in the Vertex screws could suffice to meet the "pressed against the hollow spherically-shaped portion" limitation of the '678 patent, the Federal Circuit would not have remanded the case and would have resolved the issue of infringement against them as a matter of law. Indeed, the defendants almost appear to be *blaming* the Federal Circuit for their decision to present their ill-advised "matching surfaces" argument to the jury. The defendants' contentions are unavailing. The Federal Circuit could not have been expected to canvass and assess all of the evidence that the defendants might adduce in their defense to infringement under the doctrine of equivalents. The Federal Circuit's decision certainly entitled the defendants to present a defense to infringement and challenge the plaintiffs' case, but this entitlement to put on a defense should not be interpreted as a green-light to dispense with the controlling claim construction. The only legitimate options available to the defendants were to proceed with a theory of the case that was consistent with the Federal Circuit's claim construction or abandon a doctrine of equivalents defense and focus on ensnarement and damages. Instead, the defendants elected to proceed with a defense that threatened to mislead and confuse the jury.

---

1. The defendants also remark that the plaintiffs had argued before the PTO that interference fits do not utilize matching radii. This seems to be entirely beside the point. The question is not whether matching radii are consistent with interference fits, but whether the '678 patent, as construed by the Federal Circuit, encompasses both matching and non-matching surfaces.

As Judge Richard Matsch of the District of Colorado has recently observed, "Patent law is complex and not intuitive to the average juror. Parties and counsel have an obligation to refrain from seeking to take advantage of those complexities by employing misleading strategies." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems GmbH*, 98–cv–01072–RPM, 2008 WL 410413 at *9 (D.Colo. Feb. 12, 2008) (Order for Award of Attorney Fees and Costs). The defendants here clearly sought to take advantage of the technical and legal complexities inherent in this case.

In light of the foregoing, the Court believes that some assessment of attorneys' fees would be appropriate in this case. The Court notes, however, that the defendants' damages and ensnarement arguments were well and properly litigated. Accordingly, insofar as the defendants' litigation tactics imposed a needless cost upon the plaintiffs, the Court concludes that a penalty of 15% of the plaintiffs' attorneys' fees from the date of the Federal Circuit's mandate through the date of the verdict would constitute a measured and proportionate sanction.[2]

The Court also has inherent power to sanction parties for litigation misconduct that not only imposes costs upon the other party, but that undermines the sound administration of justice. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (remarking that the imposition of sanctions can "transcend[ ] a court's equitable power concerning relations between the parties and reach[ ] a court's inherent power to police itself"). The defendants prolonged the proceedings unnecessarily (thus unduly imposing upon the jury's time), they sought to mislead both the jury and the Court, and they flouted the governing claim construction as set forth by the Federal Circuit. Under these circumstances, the Court concludes that it is proper to impose a penalty of ten million dollars.[3]

SO ORDERED.

---

2. More than one-third of the trial related to infringement. The other portions of the case were taken up with damages and ensnarement. Accordingly, 15 % is a conservative approximation of the costs needlessly borne by the plaintiffs in this case.

3. Although this sum is not based directly upon the damages assessed by the jury in this case (about 226 million dollars), it does bear some relation to that amount. The sanction reflects not only to the magnitude of the malfeasance, but also the need to provide a disincentive for such conduct in the future. Where the amount in controversy in a case is large (as was the case here), the prospective penalty for litigation misconduct, if it is to serve the purpose of deterring that conduct, should also be large. *Cf.* Fed.R.Civ.P.R. 11(c)(2) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.").